United States Bankruptcy Court
Northern District of California

In re:  Case No. 12-58139
 Chapter 11
JACK C. GALANTE
& DONNA GALANTE
_____/

**LIQUIDATING PLAN OF REORGANIZATION
AND DISCLOSURE STATEMENT
(February 20, 2014)**

**INTRODUCTION**

This is Debtors' Chapter 11 Liquidating Plan of Reorganization and Disclosure Statement (the Plan). The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed.

Part 1 contains the treatment of creditors with secured claims; Part 2 contains the treatment of general unsecured creditors: 100% of their allowed claims in lump sum payments, with 5 percent interest, on the Plan's effective date or soon thereafter. Taxes and other priority claims would be paid in full, as shown in Part 3.

Because no creditors' claims have been impaired, no creditors will be permitted to vote on the Plan. See 11 U.S.C. § 1126(f) ["(A) class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required"]. All parties in interest, however, will have an opportunity to object to the Plan. Objections to confirmation **must be filed and served no later than February 13, 2014.** The Court will hold a hearing on confirmation of the Plan **on February 20, 2014 at 11 a.m. in the U.S. Bankruptcy Court for the Northern District of California, 280 South First Street, Courtroom 3070, San Jose, CA 95113.**

Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation. Exhibit 1 includes background information regarding Debtors and the events that led to the filing of the bankruptcy petition and describes significant

Individual Chapter 11
Combined Plan & Disclosure Statement  (Version: 7/30/12)
January 7, 2014
-1-

events that have occurred during this Chapter 11 case.  Exhibit 2 contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation.  Exhibit 3 shows Debtors' monthly income and expenses.  Exhibit 4 describes how much Debtors are required to pay on the effective date of the plan.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. **<u>You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine whether to object to confirmation of the Plan.</u>**

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtors' pre-confirmation debts.  Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtors perform all obligations under the Plan.  If Debtors default in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights.  Debtors will be discharged from all pre-confirmation debts (with certain exceptions) if Debtors make all Plan payments.  Enforcement of the Plan, discharge of the Debtors, and creditors' remedies if Debtors default are described in detail in Parts 4 and 5 of the Plan.

**PART 1: TREATMENT OF SECURED CREDITORS**
**Property Sold; Secured Paid Off.**  When Debtors commenced this case, Debtors had three secured creditors: WELLS FARGO BANK, N.A., which held the sole Deed of Trust securing the mortgage loan on Debtors' real property at 6590 Crystal Springs Drive, San Jose, CA 95120; ALLY FINANCIAL, which had a security interest in Debtors' 2008 Chevrolet Corvette; and BMW FINANCIAL SERVICES, which had a security interest in Debtors' 2006 BMW X5.  During the course of this case Debtors' mother/mother-in-law paid off the debts that Debtors owed on the Corvette and the X5 in full.

Debtors then sold their real property pursuant to a Court order entered on November 5, 2013 approving the sale of the real property. Debtors sold their real property on November 7, 2013, and paid off Wells Fargo Bank in full pursuant to its payoff demand.

Debtors thus have no secured debts remaining.  Debtors' remaining creditors should note, however, that the money from the sale of the real property was placed into a blocked debtor-in-possession account (hereinafter "DIP Account"), and from the

money left over after Debtors paid off Wells Fargo and the quarterly fees they owed to the U.S. Trustee, Debtors sought and obtained the Court's permission to withdraw $50,000 from the DIP Account in order to pay a year's worth of rent on the new real property that they are currently leasing. The withdrawal should not adversely affect Debtors' ability to pay off their creditors in full with interest. Nevertheless, to give their creditors a complete picture of their financial state, Debtors are hereby informing their creditors about the withdrawal.

| Class | Name of Creditor | Collateral | Value of Collateral | Monthly Payment |
|---|---|---|---|---|
| 1 | Wells Fargo Bank, N.A. | Real Property at 6590 Crystal Springs Dr., San Jose, CA 95120 | $1,865,000 | $0, paid off in full |
| 1 | Ally Financial | 2008 Chevrolet Corvette | $30,100 | $0, paid off in full |
| 1 | BMW Financial Services | 2006 BMW X5 | $16,398 | $0, paid off in full |

**PART 2: TREATMENT OF GENERAL UNSECURED CREDITORS**

Debtors intend to pay their general unsecured creditors from the proceeds of the sale of their real property, which was completed on November 7, 2013. The proceeds from the sale were placed into a blocked, interest-bearing debtor-in-possession bank account from which Debtors plan to write checks to each of their general unsecured creditors on the Plan's effective date as follows:

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | Payment on Effective Date |
|---|---|---|---|---|
| Wells Fargo Card Services | $17,031.45 | N | $17,031.45 | $17,031.45 |
| Nordstrom FSB | $1,462.23 | N | $1,462.23 | $1,462.23 |
| HSBC Mitsubishi | $1,800.00 | N | $1,800.00 | $1,800.00 |
| Sears/CBNA | $6,475.00 | N | $6,475.00 | $6,475.00 |
| Stanford Hospitals & Clinics | $2,500.00 | N | $2,500.00 | $2,500.00 |
| Capital One, N.A. | $240.75 | N | $240.75 | $240.75 |

| | | | | |
|---|---|---|---|---|
| G.E. Capital Retail Bank | $777.28 | N | $777.28 | $777.28 |
| G.E. Capital Retail Bank | $808.60 | N | $808.60 | $808.60 |
| G.E. Capital Retail Bank | $551.77 | N | $551.77 | $551.77 |
| Kohls/Capital One | $293.00 | N | $293.00 | $293.00 |
| Macy's/Department Stores National Bank | $480.00 | N | $480.00 | $480.00 |
| National Recovery Agency | $43.00 | N | $43.00 | $43.00 |
| Stanislaus Credit Control Services | $72.00 | N | $72.00 | $72.00 |
| FIA Card Services | $17,421.37 | N | $17,421.37 | $17,421.37 |
| Bank of America, N.A. | $13,201.00 | N | $13,201.00 | $13,201.00 |
| Internal Revenue Service | $1,785.68 | N | $1,785.68 | $1,785.68 |

Allowed claims of general unsecured creditors will be paid in full, with 5 percent interest from and after the filing date, on the Plan's effective date.

Creditors in this class may not take any collection action against Debtors so long as Debtors are not in material default under the Plan (defined in Part 5(c)). **This class is unimpaired and is therefore not entitled to vote on confirmation of the Plan. However, as stated above, all parties in interest will have an opportunity to object to the Plan. Objections to confirmation must be filed and served, no later than February 13, 2014.**

**PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**
(a) Professional Fees.

Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Schein & Cai, LLP (Attorneys) | $18,000 [not including retainer] |

Professionals may not take collection action against Debtor so long as Debtors are not in material default under the Plan (defined in Part 5(c)). **Estate professionals are not entitled to vote on confirmation of the Plan.**

(b) Other Administrative Claims. Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course

of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below). All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 5(c)). **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| U.S. Trustee's Office | $1,625 [post-petition quarterly fee] |

(c) <u>Tax Claims</u>. Debtors will pay allowed claims entitled to priority under section 507(a)(8) in full over time with interest (at the non-bankruptcy statutory interest rate) in equal amortizing payments in accordance with section 511 of the Bankruptcy Code. Debtors will make one lump-sum payment, including interest, on the effective date.

Priority tax creditors may not take any collection action against Debtors so long as Debtors are not in material default under the Plan (defined in Part 5(c)). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| U.S. Internal Revenue Service | $20,875.42 | 3.6% | $20,875.42 | 1 |

**PART 4: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**
(a) <u>Discharge</u>. Debtor shall not receive a discharge of debts until Debtors make all payments due under the Plan or the court grants a hardship discharge.

(b) <u>Vesting of Property</u>. On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Part 5(f) below.

(c) <u>Plan Creates New Obligations</u>. Except as provided in

Part 5(d) and (e), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtors' obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law. To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

**PART 5: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**

(a) <u>Creditor Action Restrained</u>. The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan, except as provided in Part 5(e) below.

(b) <u>Obligations to Each Class Separate</u>. Debtors' obligations under the Plan are separate with respect to each class of creditors. Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes. For purposes of this Part 5, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

(c) <u>Material Default Defined</u>. If Debtors fail to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtors' default. If Debtors fail within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtors are in Material Default under the Plan to all the members of the affected class.

(d) <u>Remedies Upon Material Default</u>. Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7;

or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtors' pre-confirmation obligations.

(e) <u>Claims not Affected by Plan</u>.  Upon confirmation of the Plan, and subject to Part 4(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f) <u>Effect of Conversion to Chapter 7</u>.  If the case is at any time converted to one under Chapter 7, property of the Debtors shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(g) <u>Retention of Jurisdiction</u>.  The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 6(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. P. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

**PART 6: GENERAL PROVISIONS**
(a) <u>Effective Date of Plan</u>.  The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed.  If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed.  If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) <u>Disputed Claim Reserve</u>.  Debtors will create a reserve for disputed claims.  Each time Debtors make a distribution to the holders of allowed claims, Debtors will place into a reserve the amount that would have been distributed to the holders of

disputed claims if such claims had been allowed in the full amount claimed. If a disputed claim becomes an allowed claim, Debtors shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim. Any funds no longer needed in reserve shall be returned to Debtors.

(c) <u>Cramdown</u>. Pursuant to section 1129(b) of the Bankruptcy Code, Debtors reserve the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d) <u>Severability</u>. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e) <u>Governing Law</u>. Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f) <u>Lawsuits</u>.

Debtors believe that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| N/A | | | | |

(g) <u>Notices</u>. Any notice to the Debtors shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

JACK & DONNA GALANTE
c/o RAY D. HACKE, ESQ.
SCHEIN & CAI, LLP
111 NORTH MARKET ST.
SUITE 1020
SAN JOSE, CA 95120

(h) <u>Post-Confirmation United States Trustee Fees</u>. Following confirmation, Debtors shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required

by 28 U.S.C. § 1930(a)(6). So long as Debtors are required to make these payments, Debtors shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

(i) <u>Deadline for § 1111(b) Election</u>. Creditors with an allowed secured claim can make a timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.

Dated: January 7, 2014

                                        _/s/_DONNA GALANTE___
                                        Debtor

                                        _/s/ *JACK C. GALANTE*__
                                        Debtor

                                        _/s/ *RAY D. HACKE*__
                                        Attorney for Debtors

Individual Chapter 11
Combined Plan & Disclosure Statement                                 (Version: 7/30/12)
January 7, 2014      -9-

Case: 12-58139   Doc# 144   Filed: 01/07/14   Entered: 01/07/14 11:33:04   Page 9 of 18

**Attorney Certification**

    I, RAY D. HACKE, am legal counsel for the Debtor(s) in the above-captioned case and hereby certify the following: (i) the foregoing plan is a true and correct copy of the Individual Chapter 11 Liquidating Plan and Disclosure Statement promulgated by the Northern District of California, San Jose Division, on July 30, 2012 (the "Standard-Form Plan"); and (ii) except as specified below, there have been no alterations or modifications to any provision of the Standard-Form Plan.

    The following provisions of the Standard-Form Plan have been altered or otherwise modified.

- P. 1 – Retitled document to "Liquidating Plan of Reorganization"
- Pp. 1-8 – All references to "Debtor" have been changed to "Debtors" and, where necessary, verbs in sentences containing the word "Debtors" have been altered to ensure that the sentences are grammatically correct.
- P. 1, ¶ 2 – "[select one of the following](__% of their allowed claims)(a prorata portion of $___, likely to result in a __% recovery of allowed claims) in (monthly/quarterly) payments over (number) (months/years)" has been changed to "100% of their allowed claims in lump sum payments, with 5 percent interest, on the Plan's effective date or soon thereafter."
- P. 1, ¶ 3 – "Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots must be received by Debtor's counsel, and objections to confirmation must be filed and served, no later than [date]" has been changed to "Because no creditors' claims have been impaired, no creditors will be permitted to vote on the Plan. See 11 U.S.C. § 1126(f) ["(A) class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required"]. All parties in interest, however, will have an opportunity to object to the Plan. Objections to confirmation must be filed and served, no later than [date]." The portions concerning the date by which creditors must file objections to Debtors' Plan and the date on which the Court will hold its confirmation hearing have been boldfaced and/or underlined to catch readers' attention.

Individual Chapter 11
Combined Plan & Disclosure Statement     (Version: 7/30/12)
January 7, 2014
-10-
Case: 12-58139   Doc# 144   Filed: 01/07/14   Entered: 01/07/14 11:33:04   Page 10 of 18

- BOTTOM OF P. 1/TOP OF P. 2 – The sentence referring to Exhibit 5 was removed because there is no Exhibit 5, as Debtors have no investment properties.
- P. 2,¶ 1 – The portion which reads, "You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine whether to object to confirmation of the Plan" has been boldfaced and underlined to catch readers' attention.
- P. 2, ¶ 2 – The part that reads "Parts 5 and 6" has been changed to "Parts 4 and 5" because the original Part 4 has been deleted, as it is unnecessary for this plan. In addition, everything following the end of this paragraph that precedes the paragraph that begins "Property to be Sold" has been deleted, as all of Debtors' secured debts have been paid off in some way over the course of their Chapter 11 bankruptcy proceeding.
- P. 2, ¶ 3 – The portion of the paragraph in boldface type ["Property to be Sold"] has been changed to "Property Sold; Secured Creditors Paid Off." The paragraph, now split into 3 paragraphs now reads, "When Debtors commenced this case, Debtors had three secured creditors: WELLS FARGO BANK, N.A., which held the sole Deed of Trust securing the mortgage loan on Debtors' real property at 6590 Crystal Springs Drive, San Jose, CA 95120; ALLY FINANCIAL, which had a security interest in Debtors' 2008 Chevrolet Corvette; and BMW FINANCIAL SERVICES, which had a security interest in Debtors' 2006 BMW X5. During the course of this case Debtors' mother/mother-in-law paid off the debts that Debtors owed on the Corvette and the X5 in full. [New Par.] Debtors then sold their real property pursuant to a Court order entered on November 5, 2013 approving the sale of the real property. Debtors sold their real property on November 7, 2013, and paid off Wells Fargo Bank in full pursuant to its payoff demand. [New Par.] Debtors thus have no secured debts remaining. Debtors' remaining creditors should note, however, that the money from the sale of the real property was placed into a blocked debtor-in-possession account (hereinafter "DIP Account"), and from the money left over after Debtors paid off Wells Fargo and the quarterly fees they owed to the U.S. Trustee, Debtors sought and obtained the Court's permission to withdraw $50,000 from the DIP Account in order to pay a year's worth of rent on the new real property that they are currently leasing. The withdrawal should not adversely affect Debtors' ability to pay off their creditors in full with interest. Nevertheless, to give their creditors a complete picture of their financial state, Debtors are hereby informing their

creditors about the withdrawal."
- P. 3 – The table showing Debtors' secured creditors, those creditors' collateral, the value of the collateral and Debtors' monthly payment has been placed here. All other paragraphs and tables that were included on the original form plan have been eliminated.
- P. 3 (UNDER PART 2: GENERAL UNSECURED CLAIMS) – All references to small claims have been eliminated, as there is no class of small claims in Debtors' plan. The last column also reads, "Payment on Effective Date" as opposed to "Monthly Payment," as Debtors plan to pay their debts off immediately instead of month-by-month. Immediately under the headline preceding the paragraph is the following text: "Debtors intend to pay their general unsecured creditors from the proceeds of the sale of their real property, which was completed on November 7, 2013. The proceeds from the sale were placed into a blocked, interest-bearing debtor-in-possession bank account from which Debtors plan to write checks to each of their general unsecured creditors on the Plan's effective date as follows:"
- P. 4, ¶ 1 (UNDERNEATH TABLE OF GENERAL UNSECURED CREDITORS): The paragraph from the original form plan and disclosure statement that begins, "Allowed claims of general unsecured creditors" is now followed by the following words: "Allowed claims of general unsecured creditors will be paid in full, with 5 percent interest from and after the filing date, on the Plan's effective date."
- P. 4, ¶ 2 – "Part 6(c)" has been changed to "Part 5(c)" because the original Part 4 has been deleted, as it is unnecessary for this plan. The boldfaced portion of the paragraph from the original form that reads, "**Claimants in this class are impaired and are entitled to vote on confirmation of the Plan, unless their claims are paid in full with interest on the Effective Date of the Plan**" now reads, **This class is unimpaired and is therefore not entitled to vote on confirmation of the Plan. However, as stated above, all parties in interest will have an opportunity to object to the Plan. Objections to confirmation must be filed and served, no later than February 13, 2014**."
- P. 4, ¶ 4: "Part 6(c)" has been changed to "Part 5(c)" because the original Part 4 has been deleted, as it is unnecessary for this plan.
- P. 5, ¶ 1 – "Part 6(c)" has been changed to "Part 5(c)" because the original Part 4 has been deleted, as it is unnecessary for this plan.
- P. 5, ¶ 3 – "Part 6(c)" has been changed to "Part 5(c)"

- because the original Part 4 has been deleted, as it is unnecessary for this plan.
- P. 5, ¶ 4 – The portion from the original form concerning tax claims that reads, "Payments will be made [monthly/quarterly], due on the [number] day of the [month/quarter], starting [month & year]. To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the number of payments," has been changed to read, "Debtors will make one lump-sum payment, including interest, on the effective date or soon thereafter."
- P. 5, ¶ 5 – "Part 6(f)" has been changed to "Part 5(f)" because the original Part 4 has been deleted, as it is unnecessary for this plan.
- BOTTOM OF P. 5/TOP OF P. 6 – "Part 6(d) and (e) has been changed to "Part 5(d) and (e)" because the original Part 4 has been deleted, as it is unnecessary for this plan.
- P. 6, ¶ 1 – "Part 6(e)" has been changed to "Part 5(e)" because the original Part 4 has been deleted, as it is unnecessary for this plan.
- P. 6, ¶ 2 – "Part 6" has been changed to "Part 5" because the original Part 4 has been deleted, as it is unnecessary for this plan.
- P. 7, ¶ 1 – "Part 5(c)" has been changed to "Part 4(c)" because the original Part 4 has been deleted, as it is unnecessary for this plan.
- P. 7, ¶ 2 – "Part 7(f)" has been changed to "Part 6(f)" because the original Part 4 has been deleted, as it is unnecessary for this plan.
- The abbreviation "Amt" at the tops of the tables in Exhibit 2 has been changed to "Amount," simply out of personal preference and because it fit.
- Exhibit 5 has been removed, as Debtors have no investment properties.

I declare that the foregoing is true and correct. Executed this 7th day of January, 2014.

/s/ *RAY D. HACKE*
Attorney for Debtor(s)

**Exhibit 1 - Events That Led To Bankruptcy**

Debtor JACK C. GALANTE (hereinafter "JACK") is the part-owner of a family-owned and operated construction business, Galante Bros. General Engineering, Inc. (hereinafter "Galante Bros."). Debtor DONNA GALANTE (hereinafter "DONNA," and collectively with JACK "Debtors") is employed by Galante Bros. as a receptionist and bookkeeper.

In 2008, Debtors purchased the real property at 6590 Crystal Springs Drive, San Jose, CA 95120 (hereinafter "the Real Property") with a mortgage loan in the amount of $1,238,000 from Wachovia Mortgage, FSB, which merged with Creditor WELLS FARGO BANK, N.A. (hereinafter "WELLS FARGO") in early 2009. Debtors purchased the Real Property at a time when business was thriving for Galante Bros. However, the construction industry practically skidded to a halt during the residential and commercial real estate crash that gripped the Silicon Valley beginning in the late 2000s. With few construction jobs coming its way, Galante Bros. began to struggle financially, and Debtors had to slash their own salaries accordingly. Making do with less income than they were earning at the time they purchased the Real Property, Debtors became unable to make their monthly mortgage payments to WELLS FARGO. When the arrearages Debtors owed on the Real Property eventually became too high for Debtors to pay back, Debtors decided to pursue a loan modification from WELLS FARGO. Fearful that WELLS FARGO would foreclose on the Real Property while they were pursuing a loan modification, Debtors filed for bankruptcy on November 13, 2012.

**Exhibit 2 - What Creditors Would Receive if the Case Were Converted to a Chapter 7**

Real Property #1: 6590 Crystal Springs Drive, San Jose, CA 95120

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amount of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $1,865,000 | $1,413,195.07 | $82,732.87 | $0 | $0 | $319,072.06* |

*Factors in $50,000 withdrawn for purposes of paying a year's worth of rent (see Disclosure Statement pp. 2-3)

Personal Property:

| Description | Liquidation Value | Secured Claim | Amount of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash | $1,500 | None | $1,500 | $0 |
| Automobile #1: 2008 Chevrolet Corvette | $23,835 | None | $22,600 | $1,235 |
| Automobile #2: 2008 Ford F350 | $15,343 | None | None | $15,343 |
| Automobile #3: 2006 BMW X5 | $9,580 | None | $0 | $9,850 |
| Household Furnishings | $4,000 | None | $4,000 | $0 |
| Jewelry | $3700 | None | $3,700 | $0 |
| Equipment | $400 | None | $400 | $0 |
| Stocks / Investments | $100,000 | None | $0 | $100,000 |
| Other Personal Property | $10,500 | None | $10,500 | $0 |
| TOTAL | | | | $126,428 |

| | |
|---|---|
| Net Proceeds of Real Property and Personal Property | $445,500.06 |
| Recovery from Preferences / Fraudulent Conveyances                [ADD] | $0 |
| Chapter 7 Administrative Claims                              [SUBTRACT] | $0 |
| Chapter 11 Administrative Claims                             [SUBTRACT] | $40,500.42 |
| Priority Claims                                              [SUBTRACT] | $0 |
| Chapter 7 Trustee Fees                                       [SUBTRACT] | $4,290.93 |
| Chapter 7 Trustee's Professionals                            [SUBTRACT] | $2,000 |

| | |
|---|---|
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | $426,438.96 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | $64,943.13 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 100% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 100% |

**Exhibit 3 - Monthly Income and Expenses**

| Income | Amount |
|---|---|
| Gross Employment Income | $12,400 |
| Gross Business Income | $0 |
| [OTHER INCOME - DESCRIBE] | $0 |
| Positive Cash Flow on Investment Property (Exhibit 5, Line A) | $0 |
| **A. Total Monthly Income** | $12,400 |

| Expenses<br>Includes Plan Payments on Secured Claims for Residence and Car | Amount |
|---|---|
| Payroll Taxes and Related Withholdings | $0 |
| Retirement Contributions (401k, IRA, PSP) | $0 |
| Shelter Expenses (rent/mortgage, insurance, taxes, utilities)<br>(Total Arrearages on Principal Residence are $0) | $4,000 |
| Household Expenses (food) | $650 |
| Transportation Expenses (car payments, insurance, fuel) | $925.79 |
| Personal Expenses (e.g. recreation, clothing, laundry, medical) | $2,717 |
| Alimony / Child Support | $0 |
| Other Expenses | $0 |
| Negative Cash Flow on Investment Property (Exhibit 5, Line B) | $0 |
| **B. Total Monthly Expenses** | $8,292.79 |

| **C. Disposable Income** (Line A - Line B) | $4,107.21 |
|---|---|

| Plan Payments<br>Plan Payments Not Included in Calculating Disposable Income | Amount |
|---|---|
| N/A [Debtors do not plan to make monthly payments; instead, they plan to use the proceeds from the sale of their real property to pay off all of their creditors in one day] | |

**Exhibit 4 - Effective Date Feasibility**

Can the Debtor Make the Effective Day Payments?

|  | Amount | Amount |
|---|---|---|
| A. Projected Total Cash in DIP Account | $319,073 |  |
| Payments on Effective Date | 19 |  |
| Unclassified Claims |  | $64,943 |
| Administrative Expense Claims |  | $18,000 |
| Priority Claims |  | $20,876 |
| Small Claims (Class 2(a)) |  | $0 |
| U.S. Trustee Fees |  | $1,625 |
| B. Total Payments on Effective Date | 19 |  |
| **C. Net Cash on Effective Date** (Line A - Line B) (Not feasible if less than zero) | $213,629 |  |

(Amounts rounded up to nearest dollar)